UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GERALD S. and V.S.,

               Plaintiffs,

      v.

MODA HEALTH,

               Defendant.

Case No. 3:24-cv-00426-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

Plaintiff Gerald S. is the father of plaintiff V.S., and together they have filed suit against Moda Health ("Moda") alleging claims under the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under their health benefits plan, and 29 U.S.C. § 1132(a)(3), for a violation of the Mental Health and Addiction Equity Act of 2008 ("Parity Act"), 29 U.S.C. § 1185a. Am. Compl., ECF 36. Defendant has filed a motion to dismiss asserting: (1) both claims fail to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) plaintiffs' Parity Act claim fails to join a necessary party that cannot be feasibly joined pursuant to Rule 12(b)(7); and (3) lack of standing for prospective remedies pursuant to Rule 12(b)(1). Mot. Dismiss 2, ECF 24. At the hearing on the motion, the court described concerns it had regarding the sufficiency of plaintiffs' first claim for relief under 29 U.S.C. § 1132(a)(1)(B) and allowed plaintiffs to file an Amended Complaint. *See* Am.

Compl., ECF 36. Defendant has filed a Supplemental Motion to Dismiss as to the amended § 1132(a)(1)(B) claim. Supp. Mot., ECF 38. Both motions to dismiss are now fully briefed. The motions should be granted in part and denied in part for the reasons discussed below.

## I.      Motion to Dismiss for Failure to State a Claim

### A.      Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The court is not required to accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[I]f two alternative explanations exist, 'one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.'" *Keith Mfg., Co. v. Butterfield*, No. 3:15-cv-2008-SI, 2016 WL 4134555, at *2 (D. Or. Aug. 2, 2016) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

### B.    Section 1132(a)(1)(B) Claim

Congress enacted ERISA to "'protect. . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefits plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration in original) (quoting 29 U.S.C. § 1001(b)). ERISA "ensure[s] that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Wit v. United Behav. Health*, 79 F.4th 1068, 1081 (9th Cir. 2023) (alteration in original) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).

As a "comprehensive legislative scheme," ERISA has an "integrated enforcement mechanism" in 29 U.S.C. § 1132(a). *Aetna Health*, 542 U.S. at 208. Under § 1132(a)(1)(B), an ERISA plan participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This provision "speaks of *enforc[ing]* the terms of the plan not *changing* them," and there is "nothing suggesting that the provision authorizes a court to alter those terms." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436, (2011) (alteration and emphasis in original) (internal quotation marks omitted); *see also Wilson v. Cox*, No. 3:15-cv-00059-SI, 2015 WL 6123776, at *3 (D. Or. Oct. 16, 2015) (noting the Ninth Circuit has "emphasized" that a § 1132(a)(1)(B) claim "can only be successful if recovering the benefits is consistent with the terms of the plan").

"To state a claim for denial of benefits under [§ 1132(a)(1)(B)], a plaintiff must plausibly allege facts showing [the plaintiff] was owed benefits under the plan." *Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-cv-624-SI, 2020 WL 5834786, at *4 (D. Or. Sept. 30, 2020). "Thus, a

plaintiff must allege facts that establish the existence of an ERISA plan as well as the provisions of the plan that entitle [the plaintiff] to benefits." *Id.* (simplified).

Plaintiffs' § 1132(a)(1)(B) claim stems from treatment that V.S. received at Evoke at Entrada ("Evoke") and Solacium Sunrise ("Sunrise"), which plaintiffs describe are programs that provide "sub-acute inpatient care" for "adolescents with mental health, behavioral, and/or substance abuse problems." Am. Compl. ¶¶ 3–4, ECF 36. Plaintiffs claim that defendant "failed to provide coverage for V.S.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders." *Id*. ¶ 59. Defendant does not dispute that plaintiffs were participants in an ERISA plan that provided health insurance benefits during the relevant period. However, defendant makes other arguments in support of dismissal, which are addressed in turn below.

### 1.    Evoke

According to the Amended Complaint, Evoke provides "sub-acute *inpatient* care to adolescents with mental health, behavioral, *and/or substance abuse* problems." Am. Compl. ¶ 4, ECF 36 (emphasis added). Plaintiffs allege defendant denied coverage for treatment at Evoke because they were required to obtain preauthorization for "out-of-network *residential chemical dependency treatment*" and failed to do so. *Id.* ¶ 24 (emphasis added). Plaintiffs claim that no preauthorization was required because Evoke "was not actually a residential program but was instead an *outdoor behavioral health program*." *Id.* ¶ 25 (emphasis added). Plaintiffs contend that the plan directed participants to defendant's website for a list of services that require preauthorization, and outdoor behavioral health programs were not on that list. *Id.* ¶¶ 27, 67–68. Therefore, plaintiffs claim, defendant erred in requiring preauthorization for V.S.'s treatment at

Evoke. *Id.* ¶ 68. Defendant argues that because inpatient care for substance abuse *is* residential chemical dependency treatment, it validly denied coverage under the plan. Supp. Mot. Dismiss 9, ECF 38.

Plaintiffs' claim turns on the definition of "residential chemical dependency treatment." For defendant's argument to hold, inpatient care for substance abuse or outdoor behavioral health programs must fall within the ambit of the plan's definition of residential chemical dependency treatment. "Courts may consider plan documents for a Rule 12 motion when a plaintiff's ERISA claim is based on the plan's terms or the plan is sufficiently referenced." *Smith*, 2020 WL 5834786 at *3. Here, neither party has filed a copy of the plan for incorporation by reference. Moreover, at the pleading stage, the court must accept all of plaintiffs' factual allegations as true, including the allegation that Evoke was not a residential program under the plan, which they claim is evidenced by the fact that defendant's website did not state that outdoor behavioral health programs required preauthorization. This is the type of factual issue that is more appropriate for summary judgment. *Compare Harlick v. Blue Shield of California*, 686 F.3d 699, 709 (9th Cir. 2012) (finding on summary judgment that the residential treatment facility at issue, which specialized in eating disorders, was "residential care" under the plan and facts presented), *with Todd R. v. Premera Blue Cross Blue Shield of Alaska*, No. C17-1041JLR, 2019 WL 1923034, at *4 (W.D. Wash. Apr. 30, 2019) (describing inpatient and residential care as discrete categories under the plan at issue, but also noting there was overlap that created ambiguity, which must be construed against the defendant).[1]

---

[1] In its motion to dismiss, defendant did not contend that V.S.'s treatment at Evoke was not medically necessary. Therefore, the court does not consider that issue.

2.     **Sunrise**

Defendant attacks plaintiffs' § 1132(a)(1)(B) claim for treatment at Sunrise on two fronts. First, defendant asserts that V.S.'s "in-patient treatment was not medically necessary." Supp. Mot. 12, ECF 38. Second, defendant asserts that the plan's definition of residential treatment expressly excludes any program that provides less than 4 hours per day of treatment and V.S.'s treatment at Sunrise was "only for 2 hours per day." *Id.*

After leaving Evoke, V.S. received treatment at Sunrise. Am. Compl. ¶ 3, ECF 36. Defendant denied payment for V.S.'s treatment at Sunrise because defendant "determined that treatment was not medically necessary." *Id.* ¶ 34. Plaintiffs appealed the initial decision, and defendant upheld its denial of payment. *Id.* ¶ 35, 42. Defendant explained that V.S. "did not have a psychiatric or medical condition that required 24-hour specialized care with physician oversight" and she "could have been safely and effectively treated at a lower level of care." *Id.* ¶ 42. Therefore, defendant concluded that "psychiatric residential treatment" was not medically necessary. *Id.* Defendant also noted that Sunrise did "not meet the residential treatment program requirements including 8h/day, 5d/week of structured mental health treatment; weekly psychiatric physician oversight, twice per week individual therapy, and once weekly family therapy." *Id.* Plaintiffs requested review by an external agency. *Id.* ¶ 49. The external review agency likewise found that residential treatment was not medically necessary and that plaintiffs failed to demonstrate V.S. could not have been treated effectively with a lower level of care, explaining that at the time V.S. was admitted to Sunrise, there was no evidence of "imminent risk of harm to self or others," she evidenced no "suicidal ideation or history of suicide attempts," she identified no "self-harm over six months prior," she evidenced "no current

thought of harm to self or other," and she had not used substances since she was at Evoke. *Id.* ¶ 55.

Plaintiffs allege that defendant "ignored the evidence that the treatment was medically necessary," *id.* ¶ 70, and claim that medical records "show issues such as a desire to self-harm, angry outbursts, depressed and irritable moods, food restrictions, urges to resume substance abuse, and feelings of worthlessness." *Id.* ¶ 47. At this stage, all factual allegations must be resolved in plaintiffs' favor. Accepting plaintiffs' allegations as true, it is plausible that residential treatment was medically necessary for V.S.'s condition. Thus, dismissing plaintiffs' claim at this stage would be inappropriate.

Defendant argues that V.S.'s treatment at Sunrise nevertheless was not covered by the plan because plaintiffs allege that the definition of residential treatment care excludes "any program that provides less than 4 hours per day of direct treatment services." *Id.* ¶ 37, and V.S. only received two hours of treatment per day at Sunrise. *Id.* ¶ 55; Supp. Mot. 12, ECF 38. However, plaintiffs also allege that Sunrise was "a 'provider' as defined by the insurance plan booklet." Am. Compl. ¶ 38, ECF 36. Plaintiffs claim that because "mental health 'providers' are covered under the terms of the Plan, this means medically necessary treatment [at] Sunrise should have been covered either way." Supp. Resp. 6, ECF 39.

On a motion to dismiss, the court must accept well-pleaded allegations as true and draw all reasonable inferences in favor of plaintiffs. Applying that standard, plaintiffs' § 1132(a)(1)(B) claim for V.S.'s treatment at Sunrise withstands defendant's motion. Plaintiffs allege that the plan "promise[s] benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders." Am. Compl. ¶ 59, ECF 36. As noted, plaintiffs allege that V.S.'s medical records at the time she was admitted to Sunrise indicated that

residential treatment was medically necessary. It is reasonable to infer that V.S.'s medical records indicating issues such as "a desire to self-harm" and "urges to resume substance abuse" were enough to justify treatment with a mental health provider. Plaintiffs support their assertion that Sunrise is a mental health provider under the terms of the plan with factual allegations: plaintiffs allege that Sunrise provides "sub-acute inpatient care to adolescents with mental health, behavioral, and/or substance abuse problems," *id.* ¶ 4, and was "duly licensed by the State of Utah to provide residential care" as well as "fully accredited by the Joint Commission." *Id.* ¶ 38. Together, these allegations give rise to a reasonable inference that V.S. required mental health treatment and that Sunrise falls within the definition of mental health provider under the terms of the plan. Because the plan provides for medically necessary treatment of mental health disorders, plaintiffs have plausibly alleged that they were denied benefits to which they were entitled.

Finally, defendant attempts to cast plaintiffs' allegations as a claim under § 1132(a)(3) that "is not actionable under § 1132(a)(1)(B)" because it would be a duplicative cause of action. Mot. Dismiss 5, ECF 24. Plaintiffs, however, "may bring an § 1132(a)(3) claim as an alternative theory of liability to a § 1132(a)(1)(B) claim." *Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-cv-624-SI, 2021 WL 1895234, at *2 (D. Or. May 11, 2021); *see LD v. United Behav. Health*, 508 F. Supp. 3d 583, 597 (N.D. Cal. 2020) ("A plaintiff can pursue remedies under both Sections 1132(a)(1)(B) and 1132(a)(3) in the alternative based on the same allegations."). Claims under both provisions may proceed simultaneously provided there is no double recovery. *Sargent v. S. California Edison 401(k) Sav. Plan*, No. 20-cv-1296-MMA (RBB), 2021 WL 347689, at *8 (S.D. Cal. Feb. 2, 2021) (citing *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020), and *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016)).

C.    **Section 1132(a)(3) Claim**

In their second claim for relief, plaintiffs allege a violation of 29 U.S.C. § 1132(a)(3), asserting that the Parity Act "requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders." Am. Compl. ¶ 78, ECF 36. The Parity Act is an ERISA provision, codified at 29 U.S.C. § 1185a. Under the Parity Act, a group health plan that offers both medical and surgical benefits and mental health or substance use disorder benefits may not apply any treatment limitations to mental health or substance use disorder benefits that are "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)" and must ensure "there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(3)(A). The Parity Act also precludes health plans from imposing stricter financial requirements on mental health or substances abuse disorder benefits. 28 U.S.C. § 1185a(3)(A)(i); *see Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 969 (9th Cir. 2024) (discussing Parity Act); *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1157 (9th Cir. 2018) (same).

Federal regulations set forth two types of treatment limitations that would violate the Parity Act. First, there are quantitative treatment limitations, which are "expressed numerically," 29 C.F.R. § 2590.712(a)(1)(2), and include "annual, episode, and lifetime day and visit limits." 29 C.F.R. § 2590.712(c)(1)(ii). Second, there are nonquantitative treatment limitations, which include, among other limitations, "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(c)(4))(ii)(H).

To "succeed on a claim under the Parity Act, a plaintiff must show that an ERISA plan that offers both medical/surgical benefits and [mental health/substance use disorder] benefits imposed a 'more restrictive limitation on [mental health/substance use disorder] treatment than limitations on treatment for medical and surgical issues.'" *Ryan S.*, 98 F.4th at 971 (quoting *Stone v. UnitedHealthcare Ins. Co.*, 979 F.3d 770, 774 (9th Cir. 2020)). There are three ways that plaintiffs can properly plead this claim: "Plaintiffs can allege that an ERISA plan contains an exclusion that is *discriminatory on its face*, that the plan contains a facially neutral term that is *discriminatorily applied* to [mental health/substance use disorder] treatment, or that the plan administrator applies an improper *internal process* that results in the exclusion of some [mental health/substance use disorder] treatment." *Id.* (emphasis in original). "Because violations of the Parity Act can take different forms, an evaluation of the plausibility of a complaint must reflect the specific violation alleged." *Id.* at 972. The "pertinent inquiry" is whether a defendant's refusal to cover the plaintiff's treatment is based on an exclusion that "applies equally to medical or surgical benefits and mental health or substance use disorder benefits." *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1078 (W.D. Wash. 2018).

Here, plaintiffs contend that defendant committed Parity Act violations with respect to V.S.'s treatment at both Sunrise and Evoke but cite to different reasons for each.

### 1.    Reasons for Denial

#### a.    Sunrise

Plaintiffs allege that defendant denied treatment at Sunrise because it did not meet residential treatment program requirements, "including 8h/day, 5d/week of structured mental health treatment; weekly psychiatric physician oversight, twice per week individual therapy, and once weekly family therapy." Am. Compl. ¶ 42, ECF 36. Plaintiffs claim that the plan defines

residential treatment as "a state-licensed program or facility providing organized full-day or part-day program of treatment," *id.* ¶ 37, and that Sunrise meets this definition because it was "duly licensed by the State of Utah to provide residential care." *Id.* ¶ 38. Accordingly, plaintiffs claim that defendants imposed an additional programming requirement for Sunrise based on "facility type" in violation of the Parity Act. *Id.* ¶ 39–40.

Plaintiffs also allege defendant applied a different standard for assessing V.S.'s mental health treatment coverage. Plaintiffs claim that benefits for "intermediate level treatment of medical and surgical conditions" are based on "generally accepted standards of medical practice." *Id.* ¶ 83. However, for V.S.'s mental health treatment, defendant "deviate[d] from generally accepted standards of medical practice," *id.* ¶ 84, by not "tak[ing] into consideration safety issues and considerations of preventing decline or relapse." *Id.* ¶ 88.

### b.  Evoke

Defendant's basis for denying payment for V.S.'s treatment at Evoke was that "out-of-network residential chemical dependency treatment" required prior authorization that plaintiffs had not obtained. *Id.* ¶ 24. Plaintiffs allege that Evoke is "not a residential program but was instead an outdoor behavioral health program," *id.* ¶ 25, and that defendant's website did not list outdoor behavioral health programs as a service that required prior authorization. *Id.* ¶ 27.

Plaintiffs also allege that payment for treatment at Evoke was denied, in part, because defendant failed to recognize a revenue code for outdoor behavioral health program. *Id.* ¶ 28. As a result, plaintiffs were forced to submit their coverage request under a different code, which then led to the denial of benefits. *Id.* Plaintiffs allege that the "National Uniform Billing Committee, the organization responsible for developing and issuing revenue codes, has assigned wilderness programs their own separate revenue code." *Id.* ¶ 89. According to plaintiff, this

categorical exclusion of a code for wilderness programs amounts to an impermissible restriction under the Parity Act. *Id.* ¶ 90–91.

## 2.    Analysis

At this stage of the proceedings, assuming plaintiffs' allegations are true and drawing all reasonable inferences in their favor, plaintiffs' Parity Act claim is sufficient to withstand defendant's motion to dismiss. Plaintiffs allege that, whereas defendant pays claims based on generally accepted standards of medical practice for intermediate medical and surgical conditions, *id.* ¶ 83, defendant deviated from those standards with respect to Sunrise. *Id.* ¶¶ 87–88. Thus, plaintiffs have adequately stated a claim for an as-applied Parity Act violation. *See A.H. v. Anthem Blue Cross*, 2023 WL 3819367, at *3 (N.D. Cal. June 5, 2023) (finding similar allegations—that defendant provided benefits based on generally accepted standards of medical practice; defendant used more stringent medical criteria for intermediate level mental health treatment; and comparable medical and surgical treatments consisted of sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities—were sufficient to allege a Parity Act claim).

Plaintiffs have likewise done enough to plead an as-applied Parity Act claim based on defendant's imposition of additional programming requirements for Sunrise to classify as a residential program. Plaintiffs allege that the plan defines residential program as "a state-licensed program *or* facility providing an organized full-day or part-day program of treatment." Am. Compl. ¶ 37, ECF 36 (emphasis added). Plaintiffs allege that although Sunrise is licensed by the state of Utah and therefore a residential program under the plan, *id.* ¶ 38, defendant denied coverage because Sunrise did not offer sufficient programming. *Id.* ¶ 42. With these allegations, plaintiffs have gone beyond a conclusory statement that V.S.'s treatment at Sunrise was treated

more restrictively comparable medical or surgical benefits and "describe[d] ways in which Defendant applies more restrictive limitations." *A.H.*, 2023 WL 3819367 at *3.

Plaintiffs' claim that defendant violated the Parity Act by categorically excluding Evoke, a medically necessary outdoor behavioral program, also survives dismissal. In *A.Z. by & through E.Z. v. Regence Blueshield*, the plaintiff alleged that the defendant "excludes coverage of outdoor/wilderness behavioral healthcare programs for mental illnesses, even though it covers medical treatment provided in other types of intermediate residential programs, such as skilled nursing care." 333 F. Supp. 3d at 1078. The plaintiff further alleged that "blanket exclusion" was a "nonquantitative treatment limitation" and was "not in parity with the treatment limitations it imposes on comparable intermediate medical/surgical services, such as skilled nursing facilities and rehabilitation hospitals, which are expressly covered." *Id.*

The court observed that categorical denial of wilderness program benefits, "independent of the terms of the Plan," can be a restriction that violates the Parity Act. *Id.* at 1082; *see also Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018) (adopting the reasoning in *A.Z.* and holding that at the motion to dismiss stage, the issue is not whether benefits for wilderness therapy are "available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy"). The court further held that even though "[o]n its face, the Plan does not violate the Parity Act because its terms are neutral," a categorical exclusion "in practice" is "a form of 'process' falling within 29 C.F.R. § 2590.712(c)(4)(i) that qualifies as a discriminatory limitation." *Id.* At the pleading stage, the plaintiff must properly identify the "allegedly violative limitation," but need

not "specify[] the processes and factors used by a defendant to apply that exclusion." *Id*. Instead,

the case "should proceed to the discovery phase" so that the plaintiff is "permitted to test the

processes [the defendant] employ[s]" and whether the "disparate application . . . in fact exists."

*Id.*

Here, plaintiffs have likewise pleaded enough to overcome dismissal. Plaintiffs allege

that defendant failed to offer a revenue code for outdoor wilderness programs, which can be

reasonably inferred as a categorical denial in practice of medically necessary services for such

treatment. Plaintiffs need not to allege further details regarding defendant's decision-making

with respect to excluding such a revenue code because this "would likely create a serious

obstacle to an otherwise meritorious Parity Act claim." *Id.* (internal quotation mark omitted).

Defendant argues that plaintiffs' Parity Act claims fail to plausibly allege a disparity in

coverage between mental health benefits and medical or surgical benefits. Mot. Dismiss 6, ECF

24. Specifically, defendant contends that plaintiffs have not identified a "comparable analogous

medical or surgical care that Moda treats differently than the mental health treatment at issue

here." *Id.* Defendant's argument is unavailing. The Ninth Circuit has held that at this stage, "a

plaintiff need not identify an analogous category of claims with precision." *Ryan S.*, 98 F.4th at

972.

> While a plaintiff alleging a Parity Act violation must give reason to
> believe that some analogous category of claims is treated differently,
> the plaintiff can define that analogous category quite broadly. The
> statute and its implementing regulations require only a comparison
> between the MH/SUD treatment at issue and other treatment within
> the same "classification."

*Id.* The court cited to the six classifications enumerated in the regulations and noted that "[a]ny

other medical/surgical treatment within that classification can be a sufficient comparator." *Id.*;

*see* 29 C.F.R. § 2590.712(c)(2)(ii)(A) (listing the classifications as inpatient, in-network;

inpatient, out-of-network; outpatient, in-network; outpatient, out-of-network; emergency care; and prescription drugs).

Here, plaintiffs have identified analogous "medical/surgical treatment" as "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." Am. Compl. ¶ 82, ECF 36. Plaintiffs need not plead more at this stage. *See Ryan*, 98 F.4th at 972; *Patrick S. v. United Behav. Health*, 516 F. Supp. 3d 1303, 1308–09 (D. Utah 2021) (rejecting defendants' contention that identifying "subacute inpatient care such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" as analogous to "wilderness treatment programs" and "mental health residential treatment centers" was "too general and inaccurate" at the motion to dismiss stage and noting that the "Court has consistently determined" that such a comparison was sufficient for stating a Parity Act claim); *K.K. v. Premera Blue Cross*, No. C21-1611-JCC, 2022 WL 1719134, at *2–3 (W.D. Wash. May 27, 2022) (citing *Patrick S.* and noting that "[m]any courts" have likewise consistently held that analogizing mental health residential treatment centers to inpatient skilled nursing facilities, inpatient rehabilitation facilities, and inpatient hospice facilities was sufficient to state a Parity Act claim).

Defendant relies, in part, on *Charles W. v. United Behav. Health*, No. 2:18-cv-829-TC, 2019 WL 6895331 (D. Utah Dec. 18, 2019), to support its contention that plaintiffs' comparison is too vague. Mot. 8, ECF 24. There, the court found the plaintiffs' comparison of a "licensed and accredited therapeutic boarding school that provides residential treatment for girls" to "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" was insufficient to allege a Parity Act claim. *Charles W.*, WL 6895331

at *3–5. The court observed that the plaintiff did "not explain how the treatment in these facilities is analogous to the treatment [the plaintiff] received." *Id.* at *5.

Notably, however, the court acknowledged "there is no clear law on how to state a claim for a Parity Act violation." *Id.* at *4. More recent decisions, including those cited above, have not followed *Charles W.* In fact, *Patrick S.*, which was decided in the same district after *Charles W.*, holds that "analogizing mental health residential treatment centers and wilderness treatment programs to medical/surgical inpatient hospice and rehabilitation facilities is sufficient to state a Parity Act claim," 516 F. Supp. 3d at 1309, and cites to numerous decisions in that district that reached the same conclusion. *Id.* at 1309 n.38 (collecting cases). District courts in the Ninth Circuit have held similarly. *See, e.g.*, *Scott D. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 23-cv-05664-RS, 2024 WL 1123210, at *3–4 (N.D. Cal. Mar. 14, 2024) (finding the plaintiff's Parity Act claim sufficient where he identified "sub-acute inpatient treatment setting such as skilled nursing facilities, rehabilitation facilities and inpatient hospice care" as analogous medical facilities); *A.H.*, 2023 WL 3819367 at *3 (finding the plaintiff's allegations sufficient for a Parity Act claim where she identified "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" as comparable benefits for medical and surgical treatment).

In sum, the Ninth Circuit has made clear that a plaintiff can define an "analogous category quite broadly," *Ryan S.*, 98 F.4th at 972, and the weight of authority supports finding that plaintiffs have sufficiently pleaded their Parity Act claims by describing "sub-acute inpatient

treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" as a comparable "medical/surgical treatment."[2] Am. Compl. ¶ 82, ECF 36.

### D.    Statutory Standing for Restitution under § 1132(a)(3)

Plaintiffs seek "[a]ppropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3) as outlined in [their] Second Cause of Action," including an "order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss," Am. Compl. ¶ 92(f), ECF 36, and an "order providing restitution . . . for their loss arising out of the Defendant's violation of [the Parity Act]." *Id.* ¶ 92(h). Section 1132(a)(3)(B) allows a civil action to be brought by a participant, beneficiary, or fiduciary "to obtain other appropriate equitable relief" to "redress violations" or "enforce any provisions of this subsection or the terms of the plan." Defendant argues that plaintiffs "lack standing" because their "claim for 'make-whole monetary relief' seeks money damages, which fall[s] outside of the remedy provisions of Section 1132(a)(3)." Mot. Dismiss 14, ECF 24. This issue of whether plaintiff are seeking "appropriate equitable relief" under section 1132(a)(3) is characterized as statutory standing, which is addressed through a Rule 12(b)(6) motion. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009) (differentiating between Article III standing and "statutory standing" in analyzing whether plaintiff sought "appropriate equitable relief" under section 1132(a)(3));

---

[2] Defendant also cites to *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018), for the proposition that plaintiffs' allegations with respect to medical or surgical analogues are insufficient. Mot. 8, ECF 24. The court did not address whether plaintiff had sufficiently pled an analogous medical or surgical benefit. *A.H. by & through G.H.*, 2018 WL 2684387 at *7 n.9. Instead, the court dismissed the claim on other grounds. The plaintiff characterized the plan's exclusion of wilderness programs as an exclusion of "wilderness *behavioral healthcare* programs." *Id.* at *7 (emphasis in original). The court found, however, that the plan's language was not that specific, and that the wilderness program exclusion applied to all medical benefits, not just mental health and chemical dependency benefits. *Id.*

*DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 873 (9th Cir.

2017) (recognizing a motion to dismiss for lack of statutory standing under ERISA is "properly

viewed" as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)) (quoting

*Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2009)).

      Defendant relies on *Mertens v. Hewitt Assocs.*, in which the Supreme Court considered

whether "ERISA authorizes suits for money damages against nonfiduciaries who knowingly

participate in a fiduciary's breach of fiduciary duty." 508 U.S. 248, 251 (1993). There, the

beneficiaries to a qualified ERISA retirement plan sued the plan's actuary, a private firm, for

monetary damages after the actuary failed to change the plan's actuarial assumptions to reflect

the additional costs of early retirement by a large number of plan participants, resulting in the

plan's termination for insufficient assets. *Id.* at 250. Defendant asserts that *Mertens* stands for the

proposition that make-whole monetary relief "seeks money damages, which fall outside of the

remedy provisions of 29 U.S.C. § 1132(a)(3)." Mot. Dismiss 14, ECF 24.

      However, the Supreme Court later clarified its *Mertens* decision in *Cigna Corp. v.*

*Amara*. The Court observed that in *Mertens*, "the plaintiff sought 'nothing other than

compensatory damages' against a nonfiduciary," and "that such a claim traditionally speaking,

was legal, not equitable, in nature." *Amara*, 563 U.S. at 439 (citing *Mertens*, 508 U.S. at 253,

255). The Court noted that "appropriate equitable relief" under § 1132(a)(3) could be in the form

of monetary compensation where the defendant is a plan fiduciary. *Id.* The defendant, as a

fiduciary, is "analogous to a trustee," and equity courts "possess[] the power to provide relief in

the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to

prevent the trustee's unjust enrichment." *Id.* at 441–42 (internal quotation marks omitted).

Following *Amara*, courts have held that beneficiaries may recover "make-whole" relief against a fiduciary under § 1132(a)(3) where § 1132(a)(1)(B) does not provide adequate relief for the defendant's breach of fiduciary duty.[3] *A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 920 (D. Or. 2016);[4] *McGlasson v. Long Term Disability Coverage for All Active Full-Time & Part-Time Emps.*, 161 F. Supp. 3d 836, 844 (D. Ariz. 2016). However, plaintiffs "may not simply 'repackage' their § 1132(a)(1)(B) claim and thus obtain duplicative relief." *A.F.*, 157 F. Supp. 3d at 920.

Here, plaintiffs have sufficiently alleged that defendant is a fiduciary. "Liability for breach of fiduciary duty under ERISA may be imposed only against ERISA-defined fiduciaries." *CSA 401(K) Plan v. Pension Pros., Inc.*, 195 F.3d 1135, 1138 (9th Cir. 1999). Any person who exercises discretionary authority over the management or administration of an employee benefit plan is deemed a fiduciary under ERISA. *Id.* "A person's 'actions, not the official designation of his role, determines whether he enjoys fiduciary status,' regardless of what his agreed-upon contractual responsibilities may be." *Id.* (quoting *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991)). A person who makes a discretionary decision to approve or deny benefits to plan participants is a fiduciary. *Bielenberg v. ODS Health Plan, Inc.*, 744 F. Supp. 2d 1130, 1145 (D. Or. 2010); *Wise v. MAXIMUS Fed. Servs., Inc.*, 445 F. Supp. 3d 170, 186 (N.D. Cal. 2020).

Plaintiffs describe at length that defendant reviewed, evaluated, and denied their claims and appeals. Am. Compl. ¶¶ 22–57, ECF 36. Plaintiffs cite to letters from defendant explaining

---

[3] Defendant also relies on *Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009). Mot. Dismiss 14, ECF 24. There, the Ninth Circuit relied on "Supreme Court precedent" in *Mertens* to hold that a claim for make-whole monetary relief from fiduciary defendants seeks money damages and is not available under § 1132(a)(3). That decision, however, was issued before the Supreme Court's decision in *Amara*.

[4] In fact, the defendant in *A.F.* agreed that after the Court's decision in *Amara*, a beneficiary may recover make-whole relief against a fiduciary under § 1132(a)(3). 157 F. Supp. 3d at 916.

its reasons for denying benefits. *Id.* ¶¶ 42, 48. Defendant informed plaintiffs that it was "correctly" denying payment for treatment at Evoke, *id.* ¶ 24, and "had performed a careful review of the documentation provided by Sunrise Residential Treatment Center and determined the treatment was not medically necessary." *Id.* ¶ 34. Defendant also told plaintiffs that it "used internally developed criteria" and "diligently complied with [the Parity Act]." *Id.* ¶¶ 43–44.

Because plaintiffs have sufficiently pleaded that defendant is a fiduciary under ERISA, defendant's reliance on *Mertens* as categorically precluding monetary damages under § 1132(a)(3) is misplaced. Therefore, defendant's motion to dismiss plaintiffs' request for make-whole relief fails. Further, at this stage, the court cannot conclude, and defendant does not contend, that plaintiffs would otherwise obtain adequate relief under § 1132(a)(1)(B). *See McGlasson*, 161 F. Supp. 3d at 844 n.48 (collecting cases where courts concluded that at the motion to dismiss stage, whether a claim for monetary relief under § 1132(a)(3) was foreclosed could not be determined).

## II.    Motion to Dismiss for Failure to Join a Necessary Party

### A.    Rule 12(b)(7) Standard

Under Rule 12(b)(7), a defendant may challenge the complaint's failure to join a party under Rule 19. In evaluating a Rule 12(b)(7) motion to dismiss for failure to join a required party, allegations in the complaint are accepted as true and any inferences are construed in the plaintiff's favor. *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019). The burden of persuasion is on the party moving to dismiss for failure to join. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings." *Cagle v. Sattler as trustee of Toni Jean Reitman Revocable Living Tr.*, No. 3:23-cv-

01413-AN, 2024 WL 2834063, at *2 (D. Or. June 3, 2024) (citing *McShan v. Sherrill*, 283 F.2d

462, 464 (9th Cir. 1960)). "A Rule 12(b)(7) motion to dismiss for failure to join a party will be

granted only if the court determines that joinder of the party is not possible, and that the party is,

in fact indispensable." *Id.* (internal quotation marks omitted).

  **B.**  **Rule 19 Standard**

  Rule 19(a) "requires joinder of a party whose presence is necessary to ensure complete

relief among the existing parties, or to protect a party whose interests would be impaired or

impeded were the action to proceed without that party." *Deschutes River All. v. Portland Gen.*

*Elec. Co.*, 1 F.4th 1153, 1162–63 (9th Cir. 2021). If joinder is not feasible, the court must then

determine if "in equity and good conscience, the action should proceed among the existing

parties or should be dismissed." Fed. R. Civ. P. 19(b). The analysis requires a three-step inquiry.

*Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). The court first

determines whether an absent party is required, then whether joinder is feasible, and finally if

joinder is not feasible, whether the action should proceed without the absent party. *Id.*

  Under Rule 19(a), a party can be found necessary to an action in "three different ways."

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). First, if

the court is unable to "accord complete relief among existing parties" in the absence of the party.

Fed. R. Civ. P. 19(a)(1)(A). "Complete relief 'is concerned with consummate rather than partial

or hollow relief as to those already parties, and with precluding multiple lawsuits on the same

cause of action.'" *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) (quoting *Disabled Rts.*

*Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004)). Further, "to be

complete, relief must be meaningful relief as between the parties." *Alto*, 738 F.3d at 1126

(internal quotation marks omitted). Second, if the party has an interest in the action and

"resolving the action in [the party's] absence may as a practical matter impair or impede [the party's] ability to protect that interest." *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012) (citing Fed. R. Civ. P. 19(a)(1)(B)(i)). Third, if the party has an interest in the action and "resolving the action in [the party's] absence may leave an existing party subject to inconsistent obligations because of that interest." *Id.* (citing Fed. R. Civ. P. 19(a)(1)(B)(ii)).

Here, defendant argues that the "plan administrators" must be joined to accord complete relief under Rule 19(a)(1)(A), and that "sponsors and plan administrators" must be joined because they maintain an interest in the action under Rule 19(a)(1)(B)(i). Mot. Dismiss 10–11, ECF 24.

### C.     Complete Relief

Defendant's argument that complete relief requires joinder of other parties rests entirely on a dispute over a question of fact that the court must construe in plaintiffs' favor at this stage. Plaintiffs allege that defendant "was the insurer and claims administrator, as well as a fiduciary under ERISA for a *fully insured* health benefits plan" that provided coverage for plaintiffs through plaintiff Gerald's employer during the relevant time period. Am. Compl. ¶ 2, ECF 36 (emphasis added). Defendant, on the other hand, asserts that plaintiff Gerald's health plan was *self-funded* and that defendant merely provided "contractually limited administrative services." Mot. Dismiss 10–11, ECF 24. Defendant argues that the plan's sponsor may choose to terminate its contract with defendant and work with another administrator, and thus the court's orders would not bind those parties unless they are a party to this action. *Id.* at 10. Defendant, however, provides no support for the conclusion that the underlying plan is self-funded rather than fully-

insured.[5] Without a basis for the court to find that defendant is not the direct insurer, plan administrator, and fiduciary, there is also no basis for the court to conclude that plaintiffs would be unable to obtain complete relief from defendant alone as the insurer of a fully-insured health benefits plan. Moreover, defendant makes no argument that the other relief sought by plaintiffs is hollow or meaningless. Plaintiff requests, among other relief, "payment . . . as make-whole relief" and "restitution . . . for their loss arising out of" defendant's Parity Act violation. *See Berton v. Aetna Inc.*, No. 23-cv-01849-HSG, 2024 WL 869651, at *6 (N.D. Cal. Feb. 29, 2024) (denying defendants' 12(b)(7) motion and observing that even without the plan sponsor of a self-funded plan, defendant administrators could provide meaningful relief by paying damages based on their own actions). Defendant's motion to dismiss for failure to join a necessary party pursuant to Rule 19(a)(1)(A) therefore fails.

### D.    Nonparty Legal Interest in the Action

Rule 19(a)(1)(B) states that joinder of a person may be required if "that person claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). "The Ninth Circuit has read this element of Rule 19 to require that the absent party *affirmatively* claim a legally protected interest, rather than allow a third party to assert that an absent party has a claim." *Smith v. Martorello*, No. 3:18-cv-1651-AC, 2022 WL 1749875, at *4 (D. Or. Mar. 4, 2022) (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999)). The absent party must therefore "come forward and affirmatively claim an interest in the subject of the litigation." *Id.*

Here, defendant asserts that unnamed plans, sponsors, and administrators have an interest in the action. Mot. Dismiss 10, ECF 24. None of these unnamed individuals or entities have

---

[5] The question was raised at the hearing on this motion, however, defendant offered only its briefing to support its argument.

come forward to claim an interest in this case. Without more, the court is unable to find that a required party even exists, much less that there is a legally protected interest or that joinder would be feasible.

### III.  Motion to Dismiss Prospective Injunctive Relief for Lack of Article III Standing

Defendant contends that plaintiffs lack standing to claim certain injunctive and declaratory relief because they are no longer participants in the plan and thus "there is no threat of future injury and that relief can have no effect on [plaintiffs]." Mot. Dismiss 12–13, ECF 24 (internal quotation marks omitted).

Under Rule 12(b)(1), a defendant may move to dismiss a claim based on lack of Article III standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing." *Id.*

"There is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 547 (2020). "To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020). Redressability requires a showing by the plaintiff that the relief sought is "(1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Id.* at 1170. The redress "must be 'likely,' as opposed to merely 'speculative.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). To request "forward-looking relief, [plaintiffs] must face 'a real and immediate threat of repeated injury.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Moreover, plaintiffs "must demonstrate standing separately for each form

of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

A Rule 12(b)(1) motion to dismiss may be either a facial attack or a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face" whereas in a factual attack, the challenger "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Bunker v. United States*, No. 1:12-cv-1742-CL, 2013 WL 5524688, at *2 (D. Or. Oct. 3, 2013) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Here, defendant makes a facial attack because its motion rests on the sufficiency of plaintiffs' pleading rather than its truthfulness. In a facial attack, the court resolves the matter as it would a motion to dismiss under Rule 12(b)(6): the complaint's allegations are accepted as true, all reasonable inferences are drawn in plaintiff's favor, and only the pleading may be considered. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "To survive such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction." *Bunker*, 2013 WL 5524688 at *2.

Plaintiffs allege that defendant provided coverage for them from August 21, 2020, until December 31, 2020, and thereafter "coverage was provided through another health insurer." Am. Compl. ¶ 2, ECF 36. Plaintiffs do not dispute that they are no longer participants in defendant's plan. *See* Resp., ECF 28. However, plaintiffs allege that defendant's breach of fiduciary duty entitles them, pursuant to § 1132(a)(3) to "[a]n injunction ordering the Defendant to cease violating [the Parity Act] and requiring compliance with the statute" and "[a]n order requiring the reformation of the terms of the Plans and the medical necessity criteria utilized by the

Defendant to interpret and apply the terms of the Plan to ensure compliance with [the Parity Act]." Am. Compl. ¶ 92(b)–(c), ECF 36. Defendant contends that these forms of relief represent "forward-looking" remedies that will have "no effect" on plaintiffs because they are no longer enrolled in defendant's health plan. Mot. Dismiss 13, ECF 24. Therefore, defendant argues that plaintiffs lack standing and these remedies should be precluded. Defendant is correct.

The decisions in *Beldock v. Microsoft Corp.*, No. C22-1082JLR, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023), and *Duran v. California Dep't of Forestry & Fire Prot.*, No. 23-16155, 2024 WL 3565266 (9th Cir. July 29, 2024) (unpublished), are instructive. In *Beldock*, the plaintiffs, who were former employees of defendant Microsoft, alleged that the defendants breached their fiduciary duty under ERISA by employing poor decision-making in selecting investment vehicles that a prudent fiduciary would not have selected. 2023 WL 1798171 at *1. Plaintiffs sought, among other forms of relief, a "declaratory judgment that Defendants' acts violated ERISA; a permanent injunction against Defendants prohibiting the practices described in the complaint and requiring Defendants to act in the best interests of the Plan and its participants." *Id.* at *3. The defendants moved to dismiss the plaintiffs' claims for prospective injunctive relief, claiming that they lacked Article III standing because they were former employees and former participants in the plan and would not benefit from such relief. *Id.* at *3, 5. The court agreed, observing that "[t]o establish Article III standing to seek prospective injunctive relief, a plaintiff must plausibly allege that he or she is likely to suffer future injury from the conduct he or she seeks to enjoin." *Id.* at *5. The court explained that "none of the three Plaintiffs alleges that he is likely to become reemployed by Microsoft and to participate again in the Plan." *Id.* Consequently, the court found that "none of the Plaintiffs plausibly alleges that he

is likely to suffer future injury if the court does not enjoin the conduct challenged in the complaint." *Id.*

In *Duran*, the plaintiffs, who were employees of defendant California Department of Forestry and Fire Protection, challenged the defendants' COVID-19 testing policy. 2024 WL 3565266 at *1. The plaintiffs sought, among other relief, to prevent the defendants from re-instituting mandatory testing. *Id.* Although the testing had ended by the time the plaintiffs' filed their lawsuit, they claimed there a possibility, "even likely," that the testing policy "may remain in place for some employees who are unvaccinated or refuse to disclose their vaccination status." *Id.* The court noted that "[t]o have standing to seek forward-looking relief—either declaratory or injunctive—Plaintiffs must allege an imminent injury." *Id.* The court held that the plaintiffs "lack standing because they have failed to allege facts supporting imminent injury," in that they "failed to allege facts suggesting that there was a 'substantial risk' that they will be subject to testing policy in the future." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Here, plaintiffs lack standing for prospective relief in the form of an injunction requiring defendant to comply with the Parity Act and an order requiring defendant to reform the terms of the plan to comply with the Parity Act because those forms of relief would not benefit plaintiffs. *See* Am. Compl,. ¶ 92(b) & (c). Plaintiffs also broadly seek a "declaration that the actions of" defendant violates the Parity Act; however, to the extent they seek prospective relief, that claim is also foreclosed for lack of standing. *See* Am. Compl. ¶ 92(a). Like the plaintiffs in *Beldock*, plaintiffs are no longer enrolled in the plan they seek to have modified, and fail to allege or otherwise demonstrate that they will likely be enrolled at any point in the future. Consequently, any changes defendant makes with respect to the terms of the plan will have no effect on

plaintiffs and they are therefore not entitled to the prospective relief requested in paragraphs 92(a), (b), and (c) of the Amended Complaint.

## RECOMMENDATIONS

Defendant's Motion to Dismiss [24] and Supplemental Motion to Dismiss [38] should be granted in part and denied in part in that: the motion to dismiss plaintiffs' § 1132(a)(1)(B) claim should be denied; the motion to dismiss plaintiff's Parity Act claim should be denied; the motion to dismiss plaintiffs' claim for restitution should be denied; the motion to dismiss for failure to join a necessary party should be denied; and the motion to dismiss prospective declaratory and injunctive relief should be granted.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, August 14, 2025. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  July 31, 2025.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

28 – FINDINGS AND RECOMMENDATIONS